**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30945
Summary Calendar

MICHAEL A. EBBS

Plaintiff - Appellant

VERSUS

THE FOLGER COFFEE COMPANY

Defendant - Appellee

Appeal from the United States District Court
For the Eastern District of Louisiana
(94-CV-3117)
March 20, 1998

Before DUHÉ, DeMOSS & DENNIS, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:[1]

Plaintiff-Appellant Michael Ebbs ("Ebbs") appeals the district court's grant of Defendant-Appellee Folger Coffee Company's ("Folger") Motion for Judgment as a Matter of Law, dismissing his employment discrimination suit against Folger. For the reasons that follow, we affirm.

---

[1]Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

**BACKGROUND**

Ebbs, an African-American, had been employed with Folger for eight years when he was terminated on March 24, 1993. During his employment, he received numerous promotions, raises and favorable evaluations. When he was discharged, he was working as a shift coordinator in the bag department.

On March 11, 1993 an incident occurred, sparking an investigation by Folger's management which led to Ebbs's termination. On that day, Ebbs was 23 minutes late to work. A discussion ensued with his immediate supervisor, Kim Arnett ("Arnett"), a caucasian female, about proper procedures for completing time sheets. Ebbs's evasive responses to Arnett's inquiries about his time sheets led to an investigation by Monique Picou ("Picou"), an African-American department manager, and ultimately by Robert White ("White"), an African-American plant manager. Folger maintains that its investigation was unusually thorough, given the seriousness of Ebbs's transgressions and the esteem in which he had been held by management. According to Folger, the meticulous inquiry uncovered a pattern of lateness, time sheet falsification and lying by Ebbs. In accordance with Folger policy, Ebbs was terminated on March 24, 1993.

Ebbs was denied unemployment compensation by the Louisiana Department of Labor, Office of Employment Security, when, on June 8, 1993, an administrative law judge found that Ebbs was

disqualified for benefits because his discharge was for employment-related misconduct. The Louisiana State Board of Review affirmed that decision. Ebbs then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging, for the first time, that his discharge had been due to racial discrimination. The EEOC found insufficient evidence of racial discrimination and denied Ebbs's claim on July 5, 1994. Ebbs's then filed the present suit in federal court, alleging violations of 42 U.S.C. § 2000e-2 *et seq*. ("Title VII").

At the close of Ebbs's case, Folger moved for judgment as a matter of law. The court took the motion under advisement pending conclusion of all the evidence. After several hours of deliberation, the jury returned without a verdict and was declared hopelessly deadlocked. The magistrate judge, following a hearing, granted Folger's motion, finding that Ebbs had shown no genuine issues of material fact. Ebbs now appeals.

## DISCUSSION

We review *de novo* the granting of a motion for judgment as a matter of law, applying the same standard as the district court. Omnitech International, Inc. v. Clorox Co., 11 F.3d 1316, 1322-23 (5th Cir. 1994). We are to view the entire trial record in the light most favorable to the non-movant and draw all inferences in his favor. Id. at 1323. If the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable

3

jurors could not reach a contrary conclusion, we will conclude that the motion was properly granted.  Id.

To establish a *prima facie* case of racial discrimination, a plaintiff must show that:

> (1) he was a member of a racial minority; (2) he was qualified for the position from which he was discharged at the time of discharge; (3) he was discharged despite his qualifications; and (4) he was replaced by a person outside the protected class or he shows otherwise that his discharge was due to race.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);  see also Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).  If the plaintiff does so, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993); Burdine, 450 U.S. at 252-55.  If the defendant provides such a reason, the plaintiff then must prove both that the articulated reason is untrue and that it was given as a pretext for discrimination.  St. Mary's, 509 U.S. at 510-11; Burdine, 450 U.S. at 252-55.

We need not consider whether Ebbs established a *prima facie* case of racial discrimination.  Even if he had, he could not prevail.  Our independent review of the trial record convinces us that Folger has articulated a legitimate, nondiscriminatory reason for Ebbs's termination.  Further, given the scarcity of evidence that Ebbs's termination had anything to do with his race, a

4

reasonable juror could not have returned a verdict in favor of Ebbs. The evidence overwhelmingly supports Folger's position.

The record shows, not that Ebbs was fired as a result of racial animus, but instead that he was fired after an extensive investigation exposed his dishonesty. Initially, Ebbs was evasive and failed to cooperate with his supervisors. The intensity of the ensuing investigation into his work habits was not, as Ebbs implies, evidence of Folger's hostility toward him; rather, it was a sign of Folger's profound misgivings about taking such severe disciplinary action against, at least formerly, a trusted and valued employee.

Ebbs's primary accusations are leveled against his immediate supervisor, Kim Arnett. Yet the evidence shows that Picou and White, and not Arnett, were the driving forces behind the investigation and Ebbs's eventual discharge. Picou and White are, as observed above, both African-American. More importantly, however, Ebbs has adduced no evidence whatsoever that the investigative process supervised by Folger's management was infected by racial bias.

Ebbs's attempts to portray Arnett as a virulent racist who somehow tainted the upper levels of management are specious at best. The only concrete evidence Ebbs offers of Arnett's alleged racism is the drawing of a "frowny face" with its hair standing on end beside Ebbs's name on an evaluation. Ebbs argues that the "frowny face" was intended as a racial caricature of himself and

5

goes to prove that Arnett was motivated by racial animus. Folger and Arnett submit that she regularly drew "frowny faces" beside the names of shift coordinators who made mistakes on time sheets; thus, the drawings were intended to represent her own state of mind and not any characteristics of the employees she was evaluating.

Ebbs has pointed us to no credible evidence that the "frowny face" is anything other than what Arnett represented it to be. Moreover, even if the "frowny face" were evidence of Arnett's bias against African-Americans, Ebbs has not shown that such bias played any part in Folger's decision to terminate him. See Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989); Mooney v. Aramco Services Co., 54 F.3d 1207, 1218 (5th Cir. 1995). Only speculation and conjecture would have led a juror, when confronted with Ebbs's scanty evidence, to find racial discrimination.

Finally, Ebbs also fails to show that Folger treated similarly situated caucasian employees differently. Particularly, Ebbs points to the termination and subsequent reinstatement of Danny Bye, a caucasian employee. Ebbs omits mentioning, however, that Bye's reinstatement was solely the result of a collective bargaining agreement between the union and Folger. As a result of binding arbitration mandated by the agreement, Folger was contractually bound to rehire Bye. The union apparently did not elect to pursue such a remedy as to Ebbs. Thus, Bye's reinstatement has no bearing on Ebbs's case.

6

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Ebbs's Title VII claim.

AFFIRMED.